# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PAUL MEGINO, *et al.*,

     Plaintiffs,

v.

LINEAR FINANCIAL, DBA PARDEE
HOMELOANS, *et al.*,

     Defendants.

Case No. 2:09-CV-00370-KJD-GWF

**<u>ORDER</u>**

     Presently before the Court is Defendant Linear Financial L.P.'s ("Linear") (incorrectly named as Linear Financial) and Well Fargo Bank, N.A.'s (incorrectly named as Wells Fargo Home Mortgage) ("Wells Fargo" and together with Linear, the "Defendants") Motion to Dismiss (#6) and Motion to Release Lis Pendens (#10). The Court has also considered Defendants Request for Judicial Notice (#7). Though the time for doing so has passed, Plaintiffs have failed to file a response in opposition to Defendants' Motion to Dismiss. Therefore, in accordance with Local Rule 7-2(d) and good cause being found, the Court grants the motion to dismiss.

**I. Background and Procedural History**

     On October 27, 2008, Plaintiffs filed a complaint (the "Complaint") in Nevada state court on October 27, 2008 and recorded a "Lis Pendens/Notice of Pendency of Action" (the "Lis Pendens") on

the same day.  After being served, Defendants removed to federal court based upon federal question jurisdiction (#1).  Defendants subsequently filed a Suggestion of Bankruptcy upon discovery that Plaintiffs had filed a chapter 7 bankruptcy petition with the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court") (#4).  On February 2, 2009, the Bankruptcy Court entered an order granting Defendants stay relief to pursue the pending foreclosure of the Plaintiffs' property (#9).  On May 20, 2010, the Bankruptcy Court granted Wells Fargo additional stay relief, clarifying that Wells Fargo could proceed to defend the instant litigation.  Therefore, having considered Defendants' Motion and for good cause appearing pursuant to FRCP 12(b)(6), this Court hereby enters the following Order granting Defendants' Motion to Dismiss with findings of fact and conclusions of law and extinguishing the Lis Pendens.

**II.  Findings of Fact**

In September 2006, Plaintiffs obtained an adjustable rate mortgage from Linear in the amount of $384,000.00 to finance the purchase of 8513 Brackenfield Avenue, Las Vegas, Nevada, 89178, APN 176-28-210-012 (the "Property"), as reflected in a deed of trust recorded on September 11, 2006 ("Linear Deed of Trust").  Concurrently with the recordation of the Linear Deed of Trust, Linear assigned the Linear Deed of Trust, together with the note, to Wells Fargo, as reflected in the assignment of deed of trust recorded on September 11, 2006 ("Wells Fargo Assignment") as permitted by paragraph 20 of the Linear Deed of Trust ("[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice").

The Linear Deed of Trust specifically provided, in bold text, that upon default Linear possessed the right of acceleration and sale at a public trustee's sale in accordance with the terms of the deed of trust and applicable law and further provided for a change in the loan servicer.  See id. After Plaintiffs' default on the loan obligations, Defendant National Default Servicing Corporation ("NDSC") recorded the notice of default and election to sell on April 4, 2008.  Plaintiffs filed the Complaint in an apparent preemptive attempt to prevent a foreclosure sale of the Property.

The Complaint sets forth the following claims for relief: (1) Truth in Lending Act (15 U.S.C. § 1601, et seq.) ("TILA"); (2) Real Estate Settlement Procedures Act (12 U.S.C. § 2601, et seq.) ("RESPA"); (3) Home Ownership and Equity Protection Act of 1994 ("HOEPA"); (4) Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692; (5) Fiduciary Duty; (6) Covenant of Good Faith and Fair Dealing; (7), (8) Injunctive Relief; (9) Declaratory Relief; (10) Fraud; (11) Negligence (Suitability of Loan); (12) Negligence Per Se; (13) Negligent Misrepresentation; and (14) Intentional Misrepresentation.

**III. Conclusions of Law**

**A. Standard**

Nevada LR-7-2 provides in pertinent part that "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." However, failure to file an opposition to a motion to dismiss is not cause for automatic dismissal. See Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995). Before dismissing the action, the district court is required to weigh (1) the public's interest in expeditious resolution; (2) the court's need to manage its docket; (3) the risk of prejudice; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Id. (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)). In this case, these factors weigh toward dismissal. The public's interest in expeditious resolution of litigation, the court's need to manage its docket, and the lack of prejudice weigh in favor of granting the Motion to Dismiss.

Additionally, the motion itself has merit. Rule 12(b) of the Federal Rules of Civil Procedure ("FRCP") provides in relevant part:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: ... (6) failure to state a claim upon which relief can be granted….

To survive a 12(b)(6) motion, a complaint must be pled in such a fashion as to demonstrate the plaintiff's entitlement to relief. This requires that a complaint provide, "a short and plain

3

statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although FRCP 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555.  Thus, to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal citation omitted).

In Iqbal, the Supreme Court clarified the two-step approach district courts are to apply when considering such motions.  First, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.  Id. at 1950.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id. at 1949.  Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  Id. at 1950.  A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  Id. at 1949.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged--but not shown--that the pleader is entitled to relief."  Id. (internal quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed.  Twombly, 550 U.S. at 570.  This "requires more than labels and conclusions, and formulaic recitation of [a cause of action's elements] will not do."  Bell Atl. Corp. v. Twombly, 550 US. 544, 555 (2007).

**B. Plaintiffs Failed to State a Claim For Relief Against Defendants**

    i. <u>TILA, RESPA, HOEPA</u>

Plaintiffs' TILA, RESPA and HOEPA claims lack merit.  In support of the TILA claim, Plaintiffs allege that Defendants (i) refused to make a full accounting and required disclosures,  (ii) improperly retained unspecified funds belonging to Plaintiffs, and (iii) failed to disclose the ownership of the loans.  These vague, conclusory allegations do not state a plausible claim for relief.  Plaintiffs have not identified any actions in violation of TILA or otherwise identified specific disclosures that were not provided to them or that Plaintiffs, at any time, communicated a request for an accounting to Defendants.  Even if such allegations were sufficient to state a plausible claim, relief is unavailable for Plaintiffs' TILA claim.

TILA provides a one-year statute of limitations period for claims for civil damages. <u>See</u> 15 U.S.C. § 1640(e); 1635(a). The statute of limitations begins to run from the date of closing on the transaction. <u>See</u> <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986).  However, under <u>King</u>, equitable tolling is available to stay the statute of limitations if Plaintiffs have been prevented from discovering any potential claims for fraud against Defendants. <u>See</u> <u>id</u>.

Here, Plaintiffs' loan transaction closed on or about September 6, 2006.  Thus, a claim for damages should have been made no later than September 6, 2007.  Plaintiffs filed this action on October 11, 2008, well after the applicable statute of limitations.  Equitable tolling would not stay the statute of limitations here because Plaintiffs have not adequately alleged facts showing that they were prevented from discovering this claim earlier.  Accordingly, the Court dismisses Plaintiffs' claim for violation of TILA.

1            In support of the RESPA claim, Plaintiffs assert that Defendants (i) placed Plaintiffs

2   into loans for the purpose of unlawfully increasing or obtaining yield spread fees and (ii) servicing

3   contract or duties thereunder were transferred without the required notice.  Plaintiffs' "shotgun"

4   pleading against all Defendants in support of this claim, which pleading reads as if Plaintiffs located

5   selected portions of RESPA and pasted them into the Complaint as factual allegations, do not cross

6   the line into creating a plausible claim for relief.  RESPA, moreover, provides a one-year statute of

7   limitations period for claims arising under 12 U.S.C. § 2607 (yield spread premiums).  See 12 U.S.C.

8   § 2614.  Accordingly, Plaintiffs' RESPA claim fails.

9

10           Plaintiffs' HOEPA claim must be dismissed as they have failed to make any

11   allegations that their loan falls within the ambit of the statute.  The Federal Reserve has described

12   loans within the scope of HOEPA as:

13

14
> closed-end, non-purchase money mortgages secured by a consumer's
> principal dwelling (other than a reverse mortgage) where either: (a)
> The APR at consummation will exceed the yield on Treasury
> securities of comparable maturity by more than 8 percentage points for
> first-lien loans, or 10 percentage points for subordinate-lien loans; or
> (b) the total points and fees payable by the consumer at or before
> closing exceed the greater of 8 percent of the total loan amount, or
> $547 for 2007 (adjusted annually).

15

16

17

18

19

20   Truth in Lending: Final Rule, 73 Fed. Reg. 44522, 44527, n.20 (Jul. 30, 2008).  See also 15 U.S.C. §

21   1602(aa); 12 C.F.R § 226.32.  The mortgage at issue in this matter, however, is a purchase-money

22   mortgage falling outside the purview of HOEPA.  Accordingly, Plaintiffs' HOEPA claim must be

23   dismissed.

24   ///

25   ///

26

ii. <u>FDCPA</u>

Plaintiffs' FDCPA claim fails as a matter of law.  Again engaging in "shotgun" pleading, Plaintiffs assert that "Defendants and each of them" are "debt collectors" for the purposes of the FDCPA.  Defendants, however, do not meet the definition of a debt collector under the statute.  The FDCPA defines a debt collector as "any person ... who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The term "debt collector" does not include:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(G).  The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.  <u>See</u> S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.C.A.A.N. 1695, 1698.  <u>See also</u> <u>Perry v. Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985).  Even if any of the Defendants were debt collectors under the act, the district courts in the Ninth Circuit have held that the FDCPA does not apply to a non-judicial foreclosure proceeding because such proceedings are not an attempt to collect a "debt" for the purposes of the statute.  <u>See</u>, <u>e.g.</u>, <u>Hulse v. Ocwen Fed. Bank</u>, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).  <u>See also</u> <u>Contreras v. Master Financial, Inc.</u>, No. 3:10-cv-0477-LRH-VPC, 2010 U.S. Dist. LEXIS 118017*6 (D. Nev. Nov. 4, 2010).  In this case, the FDCPA is inapplicable, since Defendants are not debt collectors and a non-judicial foreclosure proceeding is not an action to collect a debt.

### iii. Fiduciary Duty

Plaintiffs' claim for breach of fiduciary duty fails as a matter of law.  Although the Nevada Supreme Court has not ruled on the issue, this Court and the Ninth Circuit Court of Appeals have predicted that the Nevada Supreme Court would hold that a lender does not owe a fiduciary duty, as "an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances." Yerington Ford, Inc. v. General Motors Acceptance Corp., 359 F. Supp. 2d 1075, 1090 (D.Nev. 2004) (overruled on other grounds sub. nom. Giles v. General Motors Acceptance Corp., 494 F.3d 865 (2007)). The decisions in Yerington Ford and Giles are consistent with numerous holdings in other jurisdictions. See Oaks Management Corp. v. Sup. Ct. of San Diego County, 145 Cal. App. 4th 453, 466, 51 Cal. Rptr. 3d 561 (2006) ("it is established that, absent special circumstances not present here, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender.") (citations omitted); AM Cosmetics, Inc. v. Solomon, 67 F.Supp.2d 312, 320 (S.D.N.Y. 1999); Keys Jeep Eagle, Inc. v. Chrysler Corp., 897 F. Supp. 1437, 1443 (S.D. Fla. 1995); G.E. Capital Mortg. Services, Inc. v. Pinnacle Mortg., 897 F. Supp. 854, 863 (E.D. Pa. 1995) ("Ordinarily, a lender does not owe a fiduciary duty to a borrower."); Stewart v. Machias Sav. Bank, 762 A.2d 44, 46 (Me. 2000).  Plaintiffs' failure and inability to allege exceptional circumstances requiring the imposition of a fiduciary duty supports the dismissal of Plaintiffs' fifth cause of action.

### iv. Covenant of Good Faith and Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." A.C. Shaw Constr. v. Washoe County, 784 P.2d 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  "[W]hen one party performs a

1   contract in a manner that is unfaithful to the purpose of the contract ... damages may be awarded

2   against the party who does not act in good faith." Hilton Hotels v. Butch Lewis Prods., 808 P.2d

3   919, 923 (Nev.1991). In Plaintiffs' rather vague allegations, they assert that Defendants breached the

4   covenant of good faith and fair dealing by commencing foreclosure proceedings without the

5   "production of documents demonstrating the lawful rights for the foreclosure." Plaintiffs, however,

6

7   give no details of which documents were necessary and were not in possession of Defendants.

8   Particularly, Plaintiffs make no specific assertion as to the conduct of Wells Fargo or Linear (or even

9   NDSC). Additionally, the assignment of the deed of trust, recorded on September 11, 2006,

10  demonstrates that Wells Fargo held the beneficial interest under the Deed of Trust. See Request for

11  Judicial Notice, Doc. No. 7, Exh. D. This claim must also be dismissed.

12

13          v. Fraud-Based Claims

14          Plaintiffs' Complaint raises two separate fraud-based claims. In the Tenth Cause of

15  Action, the sole supporting allegation of fraud is that NDSC did not provide documents

16  demonstrating that the beneficiary of the deed of trust was entitled to receive payments from

17  Plaintiffs. Plaintiffs' fraud claim appears to be based upon the premise that the presentment of the

18  original promissory note is a condition to the commencement of non-judicial foreclosure proceedings

19

20  pursuant to a deed of trust securing the note. This contention is without merit and cannot provide the

21  foundation for a fraud claim or any other claims by Plaintiffs.

22          The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in

23  NRS 107.080 et seq. The foreclosure process is commenced by the recording of a notice of default

24  and election to sell by the trustee. NRS 107.080(3). After the notice of default is recorded, the

25

26  grantor has 35 days or, in the case of owner-occupied housing, up to 5 days before the foreclosure

sale, in which to cure the deficiency in payment.  Three months after recording the notice of default,
a foreclosure sale may be conducted.  NRS 107.080(2)(d).  However, the trustee must first give notice
of the time and place of the sale.  NRS 107.080(4).  At the appointed time and place, a sale is
conducted, monies are bid, and a trustee's deed is issued.  Foreclosure procedures must be followed
or the sale will be invalid.  See Rose v. First Fed. Sav. and Loan, 777 P.2d 1318 (1989) (trustee's sale
invalid where notice requirements not satisfied).  Section 107.080 provides that the "power of sale"
is conferred upon the "trustee."  Section 107.080(2)(c) expressly states that the trustee can execute its
power of sale once "[t]he beneficiary, the successor in interest of the beneficiary or the trustee first
executes and causes to be recorded in the office of the recorder of the county wherein the trust
property, or some part thereof, is situated a notice of the breach and of his election to sell or cause to
be sold the property to satisfy the obligation."  Plaintiffs did not cite to any authority under Nevada
law that a trustee's power of sale is tied to the presentment of the original note to the debtor.
Additionally, at least under California law, an "allegation that the trustee did not have the original
note or had not received it is insufficient to render the foreclosure proceeding invalid." Neal v.
Juarez, 2007 U.S. Dist. LEXIS 98068, 2007 WL 2140640 (S.D. Cal. July 23, 2007) (citing R.G.
Hamilton Corp. v. Corum, 218 Cal. 92, 97, 21 P.2d 413 (1933) and California Trust Co. v. Smead
Inv. Co., 6 Cal.App.2d 432, 435, 44 P.2d 624 (1935)).  See, e.g., Commercial Standard Ins. Co. v.
Tab Constr., Inc., 583 P.2d 449, 451 (Nev.1978) (stating that Nevada courts often look to California
law where Nevada law is silent).  Accordingly, Plaintiffs' tenth cause of action is dismissed.

        To the extent that the Tenth Cause of Action or any of Plaintiffs' other claims are
veiled claims wrongful foreclosure, such claims must be dismissed.  "An action for the tort of
wrongful foreclosure will lie [only] if the trustor or mortgagor can establish that at the time the

power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." Collins v. Union Federal Sav. & Loan Ass'n, 99 Nev. 284, 662 P.2d 610, 623 (Nev.1983). "The material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." Id. Here, any veiled claims for wrongful foreclosure fail because Plaintiffs never allege that they were not in default on the subject loan obligations when foreclosure proceedings were initiated, or that they made any attempt to cure the default. Rather, Plaintiffs merely allege that the trustee did not receive proof that either Linear or Wells Fargo were entitled to receive payments. Plaintiffs' claims for wrongful foreclosure fail.

Plaintiffs' thirteenth and fourteenth causes of action allege that Defendants committed negligent and intentional misrepresentation. These causes of action are dismissed because Plaintiffs failed to plead fraud with particularity as required by FRCP 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FRCP 9(b). Claims of intentional and negligent misrepresentation must be pled with particularity. See Glen Holly Entertainment, Inc. v. Tektronix, Inc., 100 F.Supp.2d 1086, 1093 (C.D. Cal.1996) ("It is well established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirement."). To satisfy the particularity requirement, the Complaint must plead with particularity "averments as to the time, the place, the identity of the parties involved, and the nature of the fraud or mistake." Incorp Services, Inc. v. Nevada State Corporate Network, Inc., 2008 U.S. Dist. LEXIS 87214, 2008 WL 4527834, 2 (D. Nev. 2008) (citing Brown v. Kellar, 97 Nev. 582, 636 P.2d 874 (1981) and Allwaste, Inc. v. Hecht, 65 F.3d 1523 (9th Cir. 1995)). The

11

following allegations are the entirety of Plaintiffs' intentional misrepresentation/fraud claim, which

are representative of Plaintiffs' allegations of negligent misrepresentation:

> The Defendants had a duty to represent accurately, truthfully, and completely all the information to Plaintiffs in a manner that the Plaintiffs actually understood the content of the information so that Plaintiffs could make and be responsible for the decision whether to finance, if so, which loan to use to finance, and the advantages and disadvantages of the various types of loans.
>
> The Defendants intentionally misrepresented the nature of the loans, that the Plaintiffs needed, the interest rate, and the terms or that a new mortgage was suitable for Plaintiff, that a new mortgage of a sub-prime nature was in Plaintiff's benefit, and other intentional misrepresentations which Plaintiffs relied upon to inform them in their decision regarding the loan transactions.

See Compl. at P. 17.

The allegations of misrepresentation fail to state the time, place, or the

identity of the parties involved.  Further, the nature of the fraud pled is, at best, in cursory

statements that fall far short of the particularity standard required to survive a motion to

dismiss.  Accordingly, the thirteenth and fourteenth causes of action are dismissed.

vi. Negligence Claims

Plaintiffs have failed to state claims for negligence and negligence per se.  To

sufficiently plead a negligence claim, Plaintiffs must allege facts indicating that (1)

Defendants owed Plaintiffs a duty of care, (2) that Defendants breached that duty, (3) that the

breach was the legal and proximate cause of Plaintiffs' injury, and (4) that the Plaintiffs

suffered damages.  See Hammerstein v. Jean Dev. West, 111 Nev. 1471, 1475, 907 P.2d

975, 977 (1995).

Traditionally, a financial institution does not owe a duty of care to a borrower

when the lender's involvement in the loan transaction does not exceed the scope of its

1  conventional role as a lender of money. See Nymark v. Heart Fed. Sav. & Loan Assn., 231

2  Cal.App.3d 1089, 1096, 283 Cal. Rptr. 53, 56 (1991).[1]  The lender is under no duty to ensure

3  the success of the borrower's investment. See Wagner v. Benson, 101 Cal. App.3d 27, 34,

4  161 Cal. Rptr. 516, 521 (1980). "Liability to a borrower for negligence arises only when the

5  lender 'actively participates' in the financed enterprise 'beyond the domain of the usual

6  money lender.'" Id. at 35, 161 Cal. Rptr. at 521 (quoting Connor v. Great Western Sav. &

7
8  Loan Assn., 69 Cal. 2d 850, 864, 73 Cal. Rptr. 369, 376, 447 P.2d 609 (1968)).  Plaintiffs'

9  Complaint does not even suggest that either Linear or Wells Fargo was actively involved in

10  the success of the financed enterprise – the Property.  Plaintiffs' eleventh cause of action

11  must be dismissed because the alleged duties do not exist under the law and the alleged facts

12
13  do not establish a foundation for any duties recognized under the law.

14          The Complaint fails to provide a factual basis supporting the claim for relief

15  under a negligence per se theory.  Rather, after reciting, without factual support and analysis,

16  the elements necessary to demonstrate that a statute creates a negligence per se claim,

17
18  Plaintiffs assert that Defendants violated NRS 645B.460 et seq., NRS 598D.100 et seq., and

19  Federal Regulations such as RESPA, Truth in Lending, and Hoepa, etc." See Compl. at P 15.

20  Such conclusory pleading fails to state a plausible claim for relief.

21

22

23  _____
    [1] The Court recognizes that recent changes in federal law provide for the imposition of additional standards in
24  the mortgage lending industry pursuant to the Congressional enactment of Title XIV of the Dodd-Frank Act, the
    Mortgage Reform and Anti-Predatory Lending Act (the "Mortgage Act").  The Court, however, will apply the
25  traditional standard of care in this case in the absence of any clearly expressed intention from Congress that the
    provisions of the Mortgage Act and its implementing regulations should apply retroactively.  See In re
26  Stratosphere Corporation Sec. Lit.,1 F. Supp 2d 1096, 1105 (D.Nev. 1999)("There is a presumption against
    retroactive legislation deeply rooted in American Jurisprudence.").

1       Plaintiffs, moreover, failed to state a negligence per se claim because they do

2   not identify which statutes the individual Defendants allegedly breached.  Plaintiffs' failure

3   to identify specific statutory violations is fatal to the negligence per se claim.  See Holler v.

4   Cinemark USA, Inc., 185 F. Supp.2d 1242, 1243-44 (D. Kan. 2002) ("Notice pleading

5   requirements suggest that plaintiff must plead the specific statute on which he bases his

6   claim for negligence per se.") (add'l citations omitted).  Accordingly, the twelfth cause of

7   action must be dismissed.

8

9       Even if Plaintiffs could properly plead the elements of negligence causes of

10  action, such claims are barred by the economic loss doctrine, which precludes recovery in

11  tort for purely economic losses arising out of the breach of the contract.  See Calloway v. City

12  of Reno, 116 Nev. 250, 993 P.2d 1259 (2000).  Recovery for negligence in a contract dispute

13  is barred by the economic loss doctrine.  This Court has recognized that Nevada's economic

14  loss doctrine would apply in the lender-borrower context.  See Yerington Ford, Inc., 359 F.

15  Supp.2d at1090 ("Nevada applies the economic loss doctrine to bar recovery in tort for

16  purely monetary harm in product liability and negligence cases unrelated to product

17  liability.") (compiling cases).  The economic loss doctrine requires the dismissal of

18  Plaintiffs' eleventh and twelfth causes of action.

19

20  **IV.  Injunctive Relief**

21      Though Plaintiffs' fourth and fifth causes of action bring claims for injunctive relief,

22  the Court notes that such relief is not a cause of action in itself, but types of relief which is

23  only available should Plaintiffs be able to show a likelihood of success on the merits of the

24  other causes of action.

25

26

The basis for injunctive relief in the federal courts is irreparable injury and the inadequacy of legal remedies.  See Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).  In each case, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.  All courts agree that a plaintiff must satisfy the general equitable requirements by showing a significant threat of irreparable injury and that the legal remedies are inadequate.  See Arcamuzi v. Cont'l Airlines, Inc., 819 F.2d 935, 937 (9th Cir. 1987).  The traditional test focuses on whether the plaintiff has demonstrated a fair chance of success on the merits at the minimum, a significant threat of irreparable injury, at least a minimal tip in the balance of hardships, and whether any public interest favors granting the injunction.  See American Motorcyclist Ass'n. v. Watt, 714 F.2d 962, 965 (9th Cir. 1983).  An alternative test permits the plaintiff to meet its burden by showing either a combination of probable success on the merits and the possibility of irreparable injury or serious questions as to these matters and the balance of hardships or public interest tips sharply in plaintiff's favor.  See First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378 (9th Cir. 1987).  These are not separate tests but the outer reaches of a single continuum.  See L.A. Mem'l Coliseum Comm'n v. NFL, 634 F.2d 1197, 1201 (9th Cir. 1980).  As discussed above, Plaintiffs have failed to demonstrate a likelihood of success on the merits on all claims.  Accordingly, the Court finds that Plaintiffs' claims seeking injunctive relief also fail as a matter of law.

///

///

///

## V.  Declaratory Relief

All of Plaintiff's claims have thus far been dismissed, therefore the Court cannot grant declaratory relief based on Plaintiff's failed claims.

## VI.  Lis Pendens

NRS 14.010 states, in part, that in an action effecting the title or possession of real property, the plaintiff shall record with the recorder of the county in which the property is situated, a notice of the pendency of the action, containing the names of the parties, the object of the action and a description of the property. Id. 14.010(1).

In this case, Plaintiff filed a Notice of Pendency of Action on October 27, 2008. Because Defendants' Motion to Dismiss has been granted in full, and Plaintiffs' Complaint against Defendants shall be dismissed, there no longer exists "an action affecting title or possession of real property."  The Lis Pendens recorded on the Property is improper and is therefore expunged.

## VII.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss (#6) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiffs;

**IT IS FURTHER ORDERED** that Defendants' Motion to Release Lis Pendens (#10) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Notice of Pendency of Action recorded by Plaintiff against the real property described as 8513 Brackenfield Avenue, Las Vegas,

16

Nevada 89178, APN 176-28-210-012 as book and instrument number 20081027-0004747 is

hereby **EXPUNGED** and **RELEASED IN FULL**.

DATED this 6th day of January 2011.

_____
Kent J. Dawson
United States District Judge

17